Nov. Term, 1853.

SPEAKMAN
v.
SPEAKMAN.

---

SPEAKMAN and Others *v.* SPEAKMAN and Others.

*A.* being seized of the undivided three-fourths, and his wife of the undivided one-fourth, of a tract of land, they conveyed it to *B.* The latter gave his notes for the purchase-money payable to *A.*, and a mortgage to *A.* to secure the payment of the notes. *B.* also executed a bond, whereby he bound himself to re-convey the land to *A.* if he failed to make the first payment,—*A.* having the right, in case of such failure, to cancel the contract and take back the land to himself. *B.* having failed to make the first payment, and become a bankrupt, *A.* filed a bill against his assignee in bankruptcy, &c., setting up the contract and praying for a re-conveyance of the land, and the Court rendered a decree that the assignee should convey the land to *A.*, which he did. *Held*, that upon failure to make the first payment, the property, by virtue of the bond, vested in equity in *A.*, and not in *A.* and wife according to their original interests therein.

Thursday, December 1.

ERROR to the *Dearborn* Circuit Court.

DAVISON, J.—Bill in chancery. The complainants were the children of *Stephen S. Speakman* and *Mary*, his first wife, both of whom are deceased. *Sarah Speakman*, his second wife, and their children, being the issue of the second marriage, are the defendants.

The cause was submitted on the bill, answers, exhibits and depositions. The Court, upon final hearing, dismissed the bill.

The facts are believed to be as follows:

*Stephen S. Speakman* owned the undivided three-fourths, and *Mary*, his first wife, the undivided one-fourth of a tract of land in *Dearborn* county. They sold and conveyed it to one *Thomas Folbre*. At the time of the conveyance,

*Folbre* gave his notes for the purchase-money, being 7,150 dollars, payable to the said *Speakman*. A mortgage was also given to him, to secure the payment of the notes; and *Folbre* executed a bond, whereby he bound himself not to cut timber, &c., and to re-convey the land to *Speakman* if he failed to make the first payment; *Speakman* having the right, in case of such failure, to cancel the contract and take the land back to himself, should he desire to do so. *Folbre* failed to pay any part of the purchase-money, but applied for and obtained the benefits of the bankrupt law; and one *Henry Walker* became his assignee in bankruptcy. *Speakman* filed his bill in chancery against *Walker*, the assignee, &c., and others, in which he set up the aforesaid sale, mortgage and bond, averred the non-payment of the purchase-money, and prayed the Court to decree a re-conveyance of the land to him, and for general relief, &c. A decree passed directing *Walker*, the assignee, &c., to convey the land to *Speakman*, in accordance with the stipulation in *Folbre's* bond; which was done. The contracts relative to the sale of the land were made in 1839. *Mary Speakman* died in 1841, and the proceedings in chancery took place in 1843.

The present bill prays that one equal undivided one-fourth of said land be set apart to the complainants as heirs, &c., of said *Mary*, or that it be sold for the payment of the purchase-money, or such portion thereof as may be coming to them.

*Stephen S. Speakman* died seized of the premises. Then, the inquiry arises: What are the respective rights of the parties? Are the plaintiffs entitled in equity to one-fourth of the land in right of their mother, or does the whole tract descend equally to all his children? The effect of the conveyance to *Folbre*, and of his contract to re-convey must govern the solution of this question. By the deed from *Speakman* and wife, the whole legal and equitable title to the land described in it, vested in the grantee. *Talbott* v. *Dennis*, 1 Ind. R. 471. It must be conceded that the notes and mortgage were *Speakman's*

property. Had he died intestate while he possessed them, they would have passed to his administrator. Coote on Mort. 529. What, then, was the purpose of the bond? It stipulates that *Folbre*, in case he failed to pay the first note, should re-convey the premises to *Speakman*, should he desire a conveyance. *Speakman* also reserved the right, in the event of such failure, to cancel the contract and take the land back to himself. What was intended by this reservation is not obvious. Nor is it an important inquiry in this case. The contract of sale never was cancelled, in the legal import of that term. Had it been cancelled, or had a re-conveyance been made to both vendors, then the title would have been left as it stood before the sale; but this has not been done. The deed from *Speakman* and wife was not affected by the decree directing a conveyance to him. It is still in force, and constitutes a link in the chain of title to the premises. This could not be so, if it was cancelled.

The plaintiffs insist there is but one question in the case. It is this: If tenants in common convey land belonging to them, and the grantee, at the time of the conveyance, stipulates in writing, that if the purchase-money be not paid by a day named, the contract shall be cancelled, and that he will re-convey the land to one of the tenants in common, and the contract is accordingly cancelled and the land re-conveyed to such tenant, whether such conveyance does not inure to the benefit of both? The position assumed in this inquiry does not, in our opinion, apply to the case before us. The contract of sale to *Folbre* never was cancelled. And whether such conveyance would so inure might depend on the terms of the stipulation as understood and assented to by the parties. In this case, *Mary Speakman* was a party to the sale and conveyance of the land. Therefore, it must be presumed that she knew of, and assented to, the contract of re-conveyance. There is nothing in the record tending to rebut this presumption. Then she intended just what the whole contract imports, viz.: if *Folbre* failed to make the first payment, *Speakman* was to have the land

in fee, in lieu of the purchase-money; or if a conveyance <span>Nov. Term.<br>1853.</span> of it was not desirable, he might enforce payment of the notes and mortgage.

But, it seems to us, the law arising upon the facts presented by the record, is fully stated in *Talbott* v. *Dennis*, *supra*. That case is in point. And upon its authority the decree of the Circuit Court must be affirmed.

*Per Curiam.*—The decree is affirmed with costs.

*J. Sullivan*, for the plaintiffs.

*P. L, Spooner*, for the defendants.